IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JEFFERY C. HUGHES and        }
KATHLEEN R. HUGHES         }
                                  }
       Plaintiffs,         }
                                  }
v.                             }        CIVIL ACTION NO. H-03-0993
                                  }
LEGION INSURANCE COMPANY,  }
DALLAS GENERAL LIFE INSURANCE  }
COMPANY, CORPORATE PLAN    }
MANAGEMENT, INC.,  GROUP      }
UNDERWRITERS, INC., MAGNA    }
CORPORATION, UNIFIED STAFFING &  }
ASSOCIATES, INC. and         }
LORRIE AMBURGEY          }
                                  }
       Defendants.       }

## <u>MEMORANDUM OPINION & ORDER</u>

Pending before the court in this ERISA dispute are Defendants United Staffing &
Associates, Inc. and Lorrie Amburgey's (collectively "United Staffing's") renewed motion for
summary judgment (Doc. 81), and Plaintiffs Jeffrey C. Hughes and Kathleen R. Hughes's renewed
cross motion for summary judgment (Doc. 84).  In consideration of these motions, along with all
responses and replies and the applicable principles of law, the court ORDERS that United Staffing's
motion for summary judgment (Doc. 81) is GRANTED IN PART and DENIED IN PART and that
Plaintiffs' motion for summary judgment (Doc. 84) is GRANTED IN PART and DENIED IN
PART.

I.       <u>Relevant Facts</u>

This case arises from the failure to add an employee's dependent to an ERISA[1]
welfare benefit plan.   Kathleen Hughes ("Hughes") began working for United Staffing in March
of 1999.  As a benefit of employment, United Staffing offered its employees health insurance
through Legion Health Insurance ("Legion" or "Insurer").  Participation in the health plan was

---

[1] Employee Retirement Income Security Act of 1979, 29 U.S.C. §§ 1001, *et seq.*

voluntary, and Hughes initially enrolled for only single coverage. *See* Policy Plan No. AH10657211 (the "Plan") (Doc. 81, Ex. A-1). Under the Plan, United Staffing was both a "participant" and the "Plan Administrator."[2]   United Staffing was responsible for preparing, forwarding, and communicating about Plan documents and claims. Employees were instructed to direct their inquiries about the Plan to United Staffing, and United Staffing acted as the general intermediary between its employees and the Insurer.

In August of 1999, Hughes contacted Lorrie Amburgey ("Amburgey") at United Staffing to inquire about dependant coverage for Hughes's daughters, Heather and Whitney. Hughes executed a change of enrollment request, but thereafter changed her mind regarding the extended coverage. *See* Amburgey Fax, September 13, 1999 (Doc. 81, Ex. A-5). By October, Hughes had decided to add Heather and Whitney to the Plan. On October 19, 1999, Hughes executed a final change of enrollment request. Change of Enrollment Request (Doc. 81, Ex. A-6). United Staffing forwarded the request the next day to Group Underwriters ("Group"), a third-party administrator for Legion.

Subsequently, Group's agent, Kyria Wilhite ("Wilhite"), contacted Amburgey regarding problems with the paperwork forwarded by United Staffing. Wilhite informed Amburgey that certificates of coverage were needed for *both* Heather and Whitney to determine when the girls' prior coverage ended. *See* Wilhite Memo, dated April 5, 2000 ("Wilhite Memo") (Doc. 81, Ex. A-10) (emphasis added). On December 3, 1999, Amburgey had submitted documentation only as to Heather. This documentation included a school registration schedule and a letter from Heather's prior insurer stating that, if it had not already, coverage would end on August 24, 1999. *Id*. Amburgey sent Heather's certificate of coverage on January 5, 2000. Amburgey Memo, dated

---

[2] *See id.* (noting in the Summary Plan Description ("SPD") that the "Plan Administrator" is the "participant," which is defined in the Plan as "a professional employer organization").

January 5, 2000 (Doc. 81, Ex. A-9).[3]  Amburgey never submitted any documentation with respect to Whitney's current or prior coverage.  Wilhite Memo (Doc. 81, Ex. A-10).

Nevertheless, United Staffing begun deducting a higher premium from Hughes's paycheck for the additional coverage in late November of 1999.  Moreover, Amburgey assured Hughes several times that her daughters were covered and that Hughes should direct all insurance inquires to United Staffing rather than Legion.  Hughes Aff. at ¶ 4 (Doc. 84, Ex. B).  At the end of December 1999, Heather Hughes underwent a breast reduction surgery in reliance on coverage under the Plan.[4]  When Hughes submitted the claim to Legion, the claim was denied.  United Staffing had failed to add Heather to the Plan.  This was true despite Hughes filling out the necessary paperwork, despite paying the increased premiums, and despite being told that Heather was covered.

II.        Procedural Background

Plaintiffs initially brought suit in state court against United Staffing and others[5] for violations of the Texas Insurance Code, breach of express and implied warranties, breach of an express and implied-in-fact contract, breach of duty of good faith and fair dealing, fraud, negligence and gross negligence, promissory estoppel, and for statutory and exemplary damages (collectively "state law claims").  Defendants removed the case to federal court, claiming that the dispute "related to" an ERISA plan.  The court ultimately agreed, and held that Plaintiffs' state law claims were preempted by ERISA.  *See* Order on Plaintiffs' Motion to Remand (Doc. 34).  The court did, however, allow Plaintiffs to replead their claim under ERISA.  In their second amended complaint

---

[3] Plaintiff Jeff Hughes faxed Heather's certificate of coverage on January 1, 2000.  *Id.*  However, it is unclear from the record when Amburgey requested the required documentation from the Hugheses.

[4] Defendants do not dispute that this procedure would have been covered had Heather been added to the Plan.

[5] Legion, Group, and other third-party administrators were originally named in the suit.  After a number of dismissals, the only remaining defendants are United Staffing, Lorrie Amburgey, and Legion.  On March 29, 2004, the court granted Plaintiffs' motion to stay the proceeding against Legion (Doc. 32) because the company is insolvent and subject to a permanent injunction entered by the District Court of Travis County, Texas, 200th Judicial District.  *See* Order on Plaintiffs' Motion to Remand (Doc. 34).  This stay remains in effect.

(Doc. 57), Plaintiffs allege that Defendants (1) breached their fiduciary duty in mishandling Hughes's request for dependant coverage, (2) failed to pay benefits due under the plan, and (3) that Defendants are estopped from denying coverage of Heather.

Defendants filed a motion for summary judgment on Plaintiffs' newly pled ERISA claims.   In their response and cross motion for summary judgment, Plaintiffs raised, for the first time, a claim that United Staffing did not remit the premium payments to Legion.   The court terminated the pending summary judgment motions and ordered the parties to submit further briefing on whether Hughes paid money in exchange for insurance coverage or other promises at issue in this dispute, and if so, which entity retained that money.   *See* Order for Further Briefing (Doc. 70).   Both parties responded.   *See* Defendants' Submission (Doc. 71); Plaintiffs' Submission (Doc. 79); and Defendants' Response to Plaintiffs' Submission (Doc. 80).   Subsequently, United Staffing renewed its motion for summary judgment and Plaintiffs renewed their cross motion for summary judgment.

III.        <u>Legal Standard on Summary Judgment</u>

A party moving for summary judgment must inform the court of the motion's basis and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).   The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

Once the movant makes this showing, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), *citing U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006). The nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988). The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should

be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

IV.        Discussion

1.        BREACH OF FIDUCIARY DUTIES UNDER ERISA

Plaintiffs allege that United Staffing breached its fiduciary duties by failing to properly enroll Heather Hughes in the Plan and by misrepresenting that she had been so enrolled. *See* Plaintiffs' Second Amended Complaint at ¶¶ 10-16 (Doc. 57). Without disputing either its fiduciary status or that a breach occurred, United Staffing argues that Plaintiffs' claim must fail because the remedy for a breach of fiduciary duties is to make the plan whole, not remedy Plaintiffs' personal losses. The court disagrees because ERISA § 502(a)(3) entitles Plaintiffs to individual equitable relief.

ERISA provides two potential, and distinct, causes of action for a breach of fiduciary duties claim: §§ 502(a)(2) and (a)(3). Under ERISA § 502(a)(2), "[a] civil action may be brought . . . by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409 [29 U.S.C. § 1109]." 29 U.S.C. § 1132(a)(2). ERISA Section 409 states that a plan fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . ." 29 U.S.C. § 1109(a). By its plain language, § 502(a)(2) is a proper mechanism for pursuing a breach of fiduciary duty claim. Under both Supreme Court and Fifth Circuit precedent, however, a plan participant or beneficiary may not sue in his individual capacity for personal damages under § 502(a)(2) because the only remedy under § 409 is to the plan. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) (holding that recovery for a violation of § 409 inures to the benefit of the plan as a whole); *Matassarin v. Lynch*, 174 F.3d 549, 566 (5th Cir. 1999) (emphasizing that § 409 "limits claims to those that inure to the benefit of the plan as a whole

and not to the benefit only of individual plan beneficiaries"); *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237-38 (5th Cir. 1995). Therefore, United Staffing is indeed correct that Plaintiffs, in their individual capacity, cannot maintain a cause of action pursuant to § 502(a)(2), and Plaintiffs' breach of fiduciary duty brought under § 502(a)(2) must fail as matter of law.

Nevertheless, Plaintiffs have also invoked ERISA § 502(a)(3) to obtain equitable relief for United Staffing's breach of fiduciary duty. Under this provision, "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added). In *Varity Corp. v. Howe*, the Supreme Court held that § 502(a)(3) authorizes lawsuits for individualized equitable relief for breach of fiduciary obligations. 516 U.S. 489 (1996). Here, United Staffing's sole defense to its fiduciary breach is that ERISA does not provide an individual remedy under § 409. The Supreme Court expressly found, however, that "one can read § 409 as reflecting a special congressional concern about plan asset management without also finding that Congress intended that section to contain the exclusive set of remedies for every kind of fiduciary breach." *Id.* at 511. Thus, United Staffing's defense to § 502(a)(2) is unavailing in the context of § 502(a)(3).

The Plaintiffs' claim to equitable relief under § 502(a)(3) is further underscored by their inability to obtain adequate relief elsewhere in ERISA. As noted above, § 502(a)(2) is unavailable absent a loss to the plan. Nor can Plaintiffs maintain a claim for benefits under § 502(a)(1)(B), which provides that a civil action may be brought by a participant or beneficiary ". . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Heather Hughes was never added to the Plan, so there are no benefits due under the

Plan.  *See Varity Corp.,* 516 U.S. at 515.  Like the plaintiffs in *Varity Corp.*, the Hugheses "must rely on the *third* subsection [§ 502(a)(3)] or they have no remedy at all." *Id*. (emphasis in original).[6]

Finding that a breach of fiduciary duty claim is Plaintiffs only avenue of recovery, the court turns now to the merits of the claim.  In suits charging breach of fiduciary duty under ERISA, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Martinez v. Schlumberger, Ltd*, 338 F.3d 407, 413 (5th Cir. 2003), *quoting*, *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  Neither party disputes that United Staffing, in its role as a plan administrator, was a fiduciary.  United Staffing handled the paperwork for its employees regarding coverage under the Plan.  It forwarded documents relating to coverage to third-party administrators for the Insurer.  It instructed employees like Hughes to go through United Staffing rather than Legion for benefit information and processing.  Finally, United Staffing was responsible for remitting the premium payments to Legion.  As such, the court concludes that United Staffing wore its "fiduciary hat"[7] when it took the actions at the heart of Plaintiffs' complaint.  *See Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 824 (11th Cir. 2001) ("Proof of who is the plan administrator may come from the plan document, but can also come from the factual circumstances surrounding

---

[6] It is well-established in this circuit that a potential beneficiary may not sue for breach of fiduciary duty if he has a pending claim under section 1132(a)(1)(B) for benefits allegedly owed. *See Rhorer v. Raytheon Eng'gs and Constrs., Inc.*, 181 F.3d 634, 639 (5th Cir. 1999); *Tolson v. Avondale Indus. Inc.*, 141 F.3d 604, 610 (5th Cir. 1998); *Moore v. Raytheon Corp.*, 314 F. Supp. 2d 658, 664 (N.D. Tex. 2004); *Metropolitan Life Ins. Co. v. Palmer*, 238 F. Supp. 2d 826, 830 (E.D. Tex. 2002).  Nevertheless, United Staffing's argument that the predominate claim here is for benefits owed (such that Plaintiffs cannot maintain a breach of fiduciary duty claim) is unpersuasive.  In reality, Plaintiffs' predominate claim is that United Staffing's breach of fiduciary duty resulted in a loss of benefits that otherwise would have been owed.  Thus, this case is distinguishable from those where a plaintiff is merely refashioning a benefits claim into a breach of fiduciary duty claim, and Plaintiffs may, therefore, proceed under section 1132(a)(3).

[7] The court takes this phraseology from the "two hats" doctrine, which acknowledges that the employer is subject to fiduciary duties under ERISA only "to the extent" that it performs three specific functions identified by Congress: (i) exercising "any discretionary authority or discretionary control respecting management of [a benefits] plan or exercising any authority or control respecting management or disposition of its assets"; (ii) rendering "investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan," or having "any authority or responsibility to do so"; or (iii) having "any discretionary authority or discretionary responsibility in the administration of" the plan.  *Id*. at 412-13 (quoting 29 U.S.C. § 1002(21)(A)); *see also Schied .v Dynegy, Inc. (In re Dynegy, Inc. ERISA Litig.)*, 309 F. Supp. 2d 861, 874-75 (S.D. Tex. 2004).

the administration of the plan . . ."); *see also Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990) (noting the "intuitive appeal" in the argument that insurance company was a "de facto" administrator when it was "delegated a wide range of responsibility" and processed all claims and appeals procedures).

The fundamental inquiry is whether United Staffing breached its fiduciary duties in handling Hughes's request for dependent coverage under the Plan.   ERISA Section 404 provides:

> . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
>
> > (A) for the exclusive purpose of:
> >
> > > (i) providing benefits to participants and their beneficiaries; and
> > >
> > > (ii) defraying reasonable expenses of administering the plan; [and]
> >
> > (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . .

29 U.S.C. § 1104(a).   Failure to act in accordance with these enumerated fiduciary duties will constitute a fiduciary breach, which is actionable under § 502(a)(3).   Here, United Staffing did not act solely "in the interest of the . . .beneficiaries" or prudently for the purposes of providing benefits. It ultimately failed to contract for dependent coverage despite receiving Hughes's written request for additional coverage and deducting premiums from Hughes's paycheck.   Moreover, there can be no reasonable dispute that United Staffing mishandled the paperwork concerning the additional dependant coverage.   Amburgey did not send Heather's certificate of coverage until January 1, 2000, after she had told Hughes that Heather was covered and, even more concerning, after United Staffing began deducting the additional premiums from Mrs. Hughes's paycheck.   The fact that Wilhite assured Amburgey that Group would backdate coverage does not mitigate United Staffing's failure in obtaining the proper coverage.   *See* Sturrock Aff. at ¶ 8 (Doc. 81, Ex. A) ("United Staffing

believed [Group] would add Heather Hughes to the Plan, would back date coverage to November 1, 1999, and would reprocess the claims that had been made on her behalf . . ."). The court concludes that United Staffing did not act prudently in administering the plan and therefore breached its fiduciary duty to Hughes.

The Eleventh Circuit in *Hamilton v. Allen-Bradley Co.* reached a similar conclusion when faced with an employer's imprudent plan administration. In that case, employees were required to go through the human resources department to apply for disability benefits. *Hamilton*, 244 F.3d at 822. The plaintiff contacted the human resources director about whether she would qualify for long-term disability benefits. *Id*. The disputed evidence suggested that the director had turned the plaintiff away because the director did not believe plaintiff had a legitimate claim. *Id*. at 822, 826-27. Nor did the director provide plaintiff with the proper disability claim forms for almost two years. *Id*. at 822-23. When the director finally forwarded the forms to the insurer, the plaintiff's claim was denied as untimely. *Id.* at 823. The court found that the employer "performed a fiduciary act and is liable if such an act is deemed wrongful." *Id.* at 827.

Like the employer in *Hamilton*, United Staffing instructed Hughes to direct her benefit inquiries to the employer's personnel rather than the Insurer. Furthermore, like the *Hamilton* human resources director, Amburgey had the ability to contact, on behalf of the employee, Legion and its third-party administrators. Although Amburgey promptly forwarded Hughes's change of enrollment request, Amburgey did not include all the necessary paperwork needed to enroll Heather in the Plan. It is undisputed that Amburgey knew that Group required a certificate of coverage for Heather in order to enroll her in the Plan. Amburgey failed to send the necessary and appropriate paperwork originally in October 1999 and again in December 1999. As in *Hamilton*, "such a failure resulted in the loss of benefits for the employee." *Id.* As such, United Staffing acted wrongfully and is liable for breaching its duty to act prudently and in the sole interest of its beneficiary.

United Staffing may also have breached its fiduciary duties when Amburgey wrongly represented that Heather Hughes was a dependant under the Plan. An employer can be liable under ERISA in its fiduciary capacity for making affirmative misrepresentations to plan beneficiaries regarding plan benefits. *See Martinez,* 338 F.3d at 413-25 (discussing the evolution of an employer's duties regarding future plan changes and holding that, if an employer chooses to speak about prospective plan changes, it must do so without materially misleading a plan beneficiary). Furthermore, a fiduciary is obligated to respond promptly and adequately in a way that is not misleading to inquiries about a plan term or condition. *Switzer v. Wal-Mart Stores*, 52 F.3d 1294, 1299 (5th Cir. 1995). Here, Hughes contacted Amburgey several times to confirm coverage of Heather under the Plan. *See* Hughes Aff. at ¶ 4 (Doc. 84, Ex. B). Hughes alleges that "United Staffing and Lorrie Amburgey consistently represented, at every inquiry, that [her] coverage included dependant coverage for Heather Hughes . . ." *Id.* at ¶ 5. Indeed, United Staffing does not dispute making such representations, but argues that *oral* misrepresentations can not form the basis of Plaintiffs' claim for relief. To adequately address United Staffing's defense, the court must momentarily wade into the murky waters of "ERISA-estoppel."

The Fifth Circuit recently recognized ERISA estoppel as a cognizable legal theory. *See Mello v. Sara Lee Corp.*, 431 F.3d 440, 444 (5th Cir. 2005); *see also High v. E-Systems, Inc.*, 459 F.3d 573, 579 (5th Cir. 2006). To establish an ERISA-estoppel claim, the plaintiff must show (1) a material misrepresentation, (2) reasonable and detrimental reliance upon the misrepresentation, and (3) extraordinary circumstances. *Melo*, 431 F.3d at 444-45. Typically, plaintiffs fail to meet the second requirement of reasonableness if relying on an oral misrepresentation. A "'party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party.' ... [A]llowing 'estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves. That would not be consistent with ERISA.'" *High*, 459 F.3d at 580 (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 404

(6th Cir. 1998)). Thus, United Staffing argues, the Hugheses cannot maintain an ERISA-estoppel claim based on Amburgey's oral representations regarding coverage of Heather Hughes under the Plan.[8] United Staffing, however, presumes that the restrictions in an ERISA-estoppel claim apply equally in the context of a § 502(a)(3) fiduciary breach claim. The court is not so certain because the extent to which ERISA-estoppel and a *Martinez* duty intersect or overlap has not been adequately explored.

In this circuit, ERISA-estoppel has been applied either in the context of a claim for benefits under § 502(a)(1)(B) or as a *separate* equitable theory of relief under § 502(a)(3).[9] At first blush, the ERISA-estoppel and the *Martinez* duty appear linked. Both involve material misrepresentations and reliance, but it is the *Martinez* duty that derives its essence from the unresolved question in *Varity Corp.* regarding whether "ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative, or in response to employee inquiries." *See Varity Corp.*, 516 U.S. at 506. Thus, *Martinez* is the more applicable authority in the present case, where the court has found that the predominate claim is for the employer's fiduciary breach, and *both* parties' reliance on ERISA-estoppel is misplaced.[10] Here, it is the conduct of the employer/plan administrator that gives rise to the fiduciary breach. Amburgey misrepresented that

---

[8] Plaintiffs argue that United Staffing made written representations regarding Heather Hughes's coverage under the Plan and cite a January 1, 2000, insurance policy as such evidence. *See* Plaintiffs' Renewed Cross Motion for Summary Judgment at ¶¶ 5-6, 33(Doc. 84). An insurance policy effective after the December 1999 surgery and without any identification of the "Insured Person," however, is not competent evidence of a written misrepresentation on which Plaintiffs could have reasonably relied. *See* Dallas General Life Insurance Policy at 1(Doc. 84, Ex. D) (with a more detailed version provided at Doc. 86, Ex. B). Thus, Plaintiffs have provided no evidence of any written misrepresentations.

[9] *See Melo*, 431 F.3d at 444-45 ("We now join other circuits in explicitly adopting ERISA-estoppel as a cognizable *theory*.) (emphasis added); *High*, 459 F.3d at 579 (". . . the application of ERISA-estoppel is a legal theory rather than an interpretation of the Plan's terms . . ."); *see also Burnside v. Anthem Blue Cross Blue Shield*, No. 1:05-cv-570, 2006 U.S. Dist. LEXIS 87482, at *31-38 (E.D. Tex. Dec. 1, 2006) (discussing ERISA-estoppel as an equitable claim for benefits); *Bernstein v. Citigroup Inc.*, No. 3:06-cv-209-M, 2006 U.S. Dist. LEXIS 54712, at *27-29 (N.D. Tex. July 5, 2006) (noting that although the plaintiff pled fiduciary duty and estoppel separately, "it is apparent that [plaintiff] seeks to recover benefits under the plan through these claims[]"); *Searcy v. Jefferson Pilot Fin. Ins. Co.*, No. SA-05-CA-85-RF, 2006 U.S. Dist. LEXIS 7994, at *11 (W.D. Tex. Jan. 12, 2006) (". . . ERISA estoppel is an *affirmative cause of action* that Plaintiffs can bring in their case if they so choose") (emphasis in original).

[10] To the extent Plaintiffs have alleged an ERISA-estoppel claim for benefits under § 502(a)(1)(B), that claim is DISMISSED because Plaintiffs have failed to present any evidence of a written misrepresentations made by United Staffing.

she had contracted for dependant coverage when she reassured Hughes that everything had been taken care of and that Heather had been added to the Plan.  Amburgey knew, however, that there was a problem with the paperwork that she had forwarded because Wilhite had specifically told her that more documentation was necessary.  *See* Wilhite Memo (Doc.  81, Ex.  A-10).  Hughes provided a specific participant-initiated inquiry, and United Staffing breached its fiduciary duties by failing to respond adequately or accurately to Hughes's questions.  *See Switzer*, 52 F.3d at 1299 ("[A]bsent a specific participant-initiated inquiry, a plan administrator does not have any fiduciary duty to determine whether confusion about a plan term or condition exists. It is only after the plan administrator does receive an inquiry that it has a fiduciary obligation to respond promptly and adequately in a way that is not misleading [footnotes omitted].").

Therefore, the court concludes that United Staffing breached its fiduciary duties under § 502(a)(3)(B) by failing to enroll Heather Hughes as a dependent in the Plan and by misrepresenting that she had been so enrolled.  As such, the court grants Plaintiffs' renewed motion for summary judgment with respect to United Staffing's ERISA liability.  Unfortunately, a viable claim under ERISA does not necessarily translate into a monetary award.  Therefore, the court turns its attention to the issue of relief.

2.      EQUITABLE RELIEF UNDER SECTION 1132(a)(3)(B)

The Supreme Court in *Varity Corp.* cautioned that in fashioning "appropriate" equitable relief, courts should "keep in mind the special nature and purpose of employee benefit plans, and . . . respect the policy choices reflected in the inclusion of certain remedies and the exclusion of others." *Varity Corp.*, 516 U.S. at 515 (citations and quotations omitted). First in *Mertens v. Hewitt Associates*,[11] again in *Great-West Life & Annuity  Insurance Co. v. Knudson*,[12] and most recently in *Sereboff v. Mid Atlantic Medical Services, Inc.*,[13] the Supreme Court has

---

[11]  508 U.S. 248 (1993).

[12]  534 U.S. 204 (2002).

[13]  126 S.  Ct.  1869 (2006).

defined (and limited) the nature of equitable relief available under Section 502(a)(3)(B).  In *Mertens*, the Court expressed that "equitable relief" is available only to the extent that the historical courts of equity could so provide, noting that compensatory, or monetary, damages are the classic form of *legal* relief.  508 U.S. at 255, 257-59 (emphasis in original).  The *Great-West* Court reaffirmed *Mertens* and held that seeking or labeling a monetary award as "restitution" is not dispositive of whether it is an equitable remedy under § 502(a)(3)(B).  *See* 534 U.S. at 212-16.  "Thus, 'restitution is a  legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case,' and whether it is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought."  *Id.*  at 213 (quoting *Reich v.  Continental Casualty Co.*, 33 F.3d 754, 756 (7th Cir. 1994) (Posner, J.)).  For equitable restitution to apply, the plaintiff must seek "particular funds or property in the defendant's possession," not  the consequential damages underpinning liability.  *Id.*  at 214.  Therefore, the fiduciary's unjust enrichment is a prerequisite to equitable restitution.  Despite the chorus of criticism from both federal courts and scholars regarding the "law-equity paradigm," this court remains bound by precedent to conclude that restitution in the amount of what Plaintiffs would have been owed under the Plan but for United Staffing's breach of fiduciary duties cannot be maintained because Plaintiffs seek to impose personal liability for consequential damages.

Nevertheless, Plaintiffs also allege that United Staffing failed to remit the premium payments to Legion.[14]  This assertion is supported by a letter from Group, claiming to have never (1) received notice regarding a change in coverage, or (2) collected premiums for additional coverage.  Rucker Letter (Doc.  84, Ex.  E).  United Staffing vigorously denies retaining the additional premiums deducted from Hughes's paychecks.  *See* Defendants' Response to Order for Further Briefing (Doc.  71).  It argues that the Rucker Letter is unreliable because of its inherent

---

[14] The court notes that this allegation, if true, would also support the finding of a breach of fiduciary duty.  However, the imprudent plan administration and the failure to provide accurate information in response to the beneficiary's questions regarding coverage are alone sufficient to find that United Staffing breached its fiduciary duties as a matter of law.

inconsistencies. United Staffing directs the court to the fact that Group did have notice, through Wilhite, of Hughes's request for additional coverage. Moreover, according to United Staffing's president, Yvonne Sturrock, "[t]here are no documents indicating that Legion Insurance Company did not receive [Hughes's] premium payments." Affidavit of Yvonne Sturrock at ¶ 6 (Doc. 81, Ex. A). However, as Plaintiffs point out, United Staffing has not produced any evidence showing it did forward the premiums in question. *See* Plaintiffs' Response to Order for Further Briefing (Doc. 79). The Rucker Letter, while inconsistent regarding notice, does provide some documentary evidence that the Insurer never received the premium payments. If proven true, then the fiduciary in this case has been unjustly enriched, and the Plaintiffs would be entitled to equitable restitution of these particular funds in the defendant's possession. Therefore, the court finds that this is a material fact in dispute, and summary judgment in either parties' favor is not appropriate.

### 3.    ATTORNEYS' FEES UNDER ERISA

Plaintiffs request their attorneys' fees amassed in connection with this cause of action. ERISA provides that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1); see *Russell*, 473 U.S. at 147; *Sunbeam-Oster Co., Inc. Group Benefits Plan v. Whitehurst*, 102 F.3d 1368, 1378 (5th Cir. 1996). The court must apply five factors to determine whether attorneys' fees are warranted under the particular facts of the case: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *See Bannistor v. Ullman*, 287 F.3d 394, 408-09 (5th Cir. 2002) (citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)). "'No one of these

factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying [the relevant costs and attorneys' fees provision of ERISA].'" *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 821 (5th Cir. 1997) (quoting *Bowen*, 624 F.2d at 1266).

Attorneys' fees and costs are merited in this case because Plaintiffs were legitimately wronged by United Staffing's breach of fiduciary duties and ERISA does not provide Plaintiffs with a make-whole remedy.  It is undisputed that Hughes complied with United Staffing's procedures in obtaining the additional dependant coverage.  It is undisputed that she paid the additional premiums.  She contacted her plan administrator to verify coverage and was provided inaccurate information.  Yet, United Staffing failed to communicate adequately with Legion and its third party administrators.  This failure ultimately cost Hughes her dependent coverage under the Plan.  The constrained remedies available under ERISA § 502(a)(3)(B) do little to deter other breaching fiduciaries in similar situations.  Without at the award of attorneys' fees and costs, there would be no deterrence.  As such, the court exercises its discretion to award Plaintiffs' reasonable attorneys' fees and costs.

V.        Conclusion

Recognizing that the remedies under ERISA are not very expansive, Plaintiffs urge the court to reconsider its decision to deny remand to state court.  The court declines to readdress this issue.  Accordingly, it is hereby

**ORDERED** that Plaintiffs' renewed motion for summary judgment (Doc. 84) is **GRANTED IN PART and DENIED IN PART**.  Plaintiffs are entitled to partial summary judgment on the issue of United Staffing's liability for breach of fiduciary duties under ERISA § 502(a)(3).  A question of fact remains on whether equitable restitution is warranted.  If the parties choose to go to trial, the only issue to be tried is whether United Staffing remitted Hughes's premium payments to Legion or its third-party administrators.  It is further

**ORDERED** that United Staffing's renewed motion for summary judgment (Doc. 81) is **GRANTED IN PART and DENIED IN PART**.  The court grants United Staffing's motion for summary judgment on Plaintiffs' claims brought under ERISA §§ 502(a)(1)(B) and (a)(2). Moreover, the court grants United Staffing's motion for summary judgment on Plaintiffs' ERISA-estoppel claims.

**ORDERED** that United Staffing shall pay Plaintiffs' reasonable attorneys' fees and costs of court associated with this cause of action.

SIGNED at Houston, Texas, this 12th day of March, 2007.

_____

MELINDA HARMON

UNITED STATES DISTRICT JUDGE